<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| TD BANK, N.A. as successor by merger to TD AUTO FINANCE, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> CITY OF PASSAIC and ESSEX COUNTY RECOVERY BUREAU TOWING AND RECOVERY, <br><br> *Defendants*. | Civil Action No. 25-02236 <br><br> **OPINION** <br><br> March 30, 2026 |

**SEMPER**, District Judge.

The current matter comes before the Court on Defendant Essex County Recovery Bureau Towing Recovery's ("ECRB") Motion to Dismiss Counts One, Two, Four, Five and Six of TD Bank N.A., as successor by merger to TD Auto Finance, LLC's ("Plaintiff" or "TD") Complaint. (ECF 1, "Compl."). (ECF 21.) Plaintiff opposed the motion. (ECF 27, "Opp."). ECRB filed a reply. (ECF 28, "Reply."). The Court has decided this motion upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendant's motion to dismiss is **GRANTED in part** and **DENIED in part**.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Plaintiff TD brought this action against Defendants ECRB and City of Passaic ("Passaic"), challenging their practices regarding vehicle towing. (Compl. ¶¶ 1–3.) Plaintiff is a foreign corporation authorized to do business in New Jersey. (*Id.* ¶ 7.) Defendant Passaic is a municipality organized and existing under the laws of the State of New Jersey. (*Id.* ¶ 8.). Defendant ECRB is a business incorporated in the State of New Jersey. (*Id.* ¶ 9.)

Plaintiff's business involves acquiring retail installment contracts and holding the corresponding lien interests in vehicles. (*Id.* ¶ 7.) Defendant Passaic regularly seizes vehicles as part of its law enforcement activity. (*Id.* ¶ 1.) Defendant ECRB is in the business of motor vehicle towing and storing (*Id.* ¶ 9), including at the direction of Passaic police officers acting in the regular course of their duties as law enforcement officers. (*Id.* ¶ 15.)

Before December 24, 2024, nonparty Primary Water and Sewer, LLC (the "Customer") entered into a retail installment contract to finance the purchase of a 2016 Ford F-350 Super Duty SRW bearing VIN 1FT8W3BT4GED34409 (the "Vehicle"). (*Id.* ¶¶ 7, 11.) Such contract was assigned to TD, at which point TD obtained and perfected a security interest in the Vehicle. (*Id.* ¶ 11.) The Customer subsequently defaulted on the payment obligations under the retail installment contract, which entitled TD to immediate repossession of the Vehicle. (*Id.* ¶ 13.)

On December 24, 2024, Passaic instructed ECRB to tow the Vehicle from the roadway and store it, taking custody of the Vehicle. (*Id.* ¶ 16.) TD had no involvement in or knowledge of the operation of the Vehicle at the time it was seized by Passaic Police and/or ECRB. (*Id.* ¶ 17.) On

---

[1] The facts and procedural history are drawn from the Complaint and documents integral to or relied upon by the Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). For the purposes of a motion to dismiss, the facts drawn from the Complaint are accepted as true. *See Fowler v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

2

January 3, 2025, TD received a "Notice of Towed-Stored Vehicle" from ECRB dated December 27, 2024, stating that the Vehicle had been impounded and/or towed by the Passaic Police Department. (*Id.* ¶ 20.) TD demanded that the Vehicle be released to it, but ECRB refused unless TD paid the required towing and storage fees. (*Id.* ¶ 21.) ECRB claimed it could detain the Vehicle because ECRB had an *ex parte* possessory lien on the Vehicle for towing and storage charges. (*Id.* ¶¶ 21, 23.) The fees charged by ECRB as a condition for release of the Vehicle amounted to $2,240.94 plus daily accruing storage fees of $125 plus tax per day. (*Id.* ¶ 22.) Other conditions of release included TD obtaining a police release form from the Passaic Police Department. (*Id.* ¶ 24.) TD did not pay the fees demanded by ECRB and did not comply with any other conditions placed on the release of the Vehicle. (*Id.* ¶ 27.) ECRB refused to release the Vehicle to TD, and remains in possession of the Vehicle. (*Id.* ¶¶ 27-28.)

Plaintiff alleges that Passaic did not have a warrant or other court order relating to the seizure, detention, or conditions placed on the release of the Vehicle. (*Id.* ¶¶ 18, 25.) Passaic also did not hold any hearing relating to its seizure, detention, nor the conditions placed on the release of the Vehicle. (*Id.* ¶¶ 19, 26.) Plaintiff alleges that the seizing and detention of the Vehicle comported with Passaic's and ECRB's regular policies, customs and/or practices for the handling of vehicles encountered and impounded under the same or similar circumstances. (*Id.* ¶ 32.) Plaintiff challenges the constitutionality of the following practices by Defendants: (a) Passaic's initial seizure of vehicles; (b) Passaic's turnover of possession of vehicles to ECRB; (c) Passaic and/or ECRB's continued detention of a vehicle while ECRB asserts an *ex parte* possessory lien and Defendants place other conditions on the release of such a vehicle; and (d) ECRB taking title to, and/or selling, a vehicle while terminating all property interests in a vehicle. (*Id.* ¶ 42.)

On April 2, 2025, Plaintiff filed its Complaint, asserting six counts: violation of the Fourth Amendment by depriving Plaintiff of property through unreasonable seizure against both Defendants (Count 1) (*Id.* ¶¶ 59–68); violation of the Fourteenth Amendment by depriving Plaintiff of property without due process of law against both Defendants (Count 2) (*id.* ¶¶ 69–79); violation of the Fifth Amendment against Passaic (Count 3) (*id.* ¶¶ 80–90); replevin against ECRB (Count 4) (*id.* ¶¶ 91–95); conversion against ECRB (Count 5) (*id.* ¶¶ 96–100); and tortious interference against ECRB (*id.* ¶¶ 101–103). TD seeks (1) damages (*id.* at 12–16); (2) a declaration pursuant to 28 U.S.C. § 2201-2202 that Defendants' policies are unconstitutional (*id.*); and (3) a declaration under 8 U.S.C. § 2201 that N.J. Stat. Ann § 2A:44-21 (2024) is facially unconstitutional for authorizing Defendants' conduct. (*id.*)

Defendant Passaic filed an Answer on June 12, 2025, denying the allegations against it and asserting affirmative defenses. (ECF 22.) Also on June 12, 2025, Defendant ECRB moved to dismiss Counts One, Two, Four, Five, and Six of the Complaint under Fed. R. Civ. P. 12(b)(6) and (7), arguing that Plaintiff failed to state a plausible claim and did not name the Customer in its replevin claim.  (ECF 21.) On July 7, 2025, Plaintiff filed an opposition to ECRB's partial motion to dismiss. (Opp.) On July 14, 2025, ECRB filed a reply. (Reply.)

## II.    <u>LEGAL STANDARD</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

4

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Id.* at 789.

To prevail on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(7), the movant must show that the plaintiff has failed to join a party under Federal Rule of Civil Procedure 19. Rule 19(a)(1) states:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

If either clause (A) or (B) of Rule 19 is satisfied, "the absent party is a necessary party that should be joined if possible." *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007) (citation omitted). If a party's joinder is necessary, but not feasible, such that the party is indispensable to the case pursuant to Rule 19(b), then the action cannot go forward. *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404 (3d Cir. 1993).

For the purposes of the 12(b)(6) analysis, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorably to the plaintiff, it appears that no relief could be granted

under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

## III.    DISCUSSION

### A.  Section 1983 Claims

Plaintiff brings two claims against ECRB pursuant to 42 U.S.C. § 1983: deprivation of property by unreasonable seizure (Count 1) and deprivation of property without due process of law (Count 2).

#### 1.  State Action

Section 1983 "subjects to liability those who deprive persons of federal constitutional or statutory rights 'under color of any statute, ordinance, regulation, custom, or usage' of a state." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (citing 42 U.S.C. § 1983). Accordingly, a plaintiff challenging another person's action under § 1983 "must establish that she was deprived of a federal constitutional or statutory right by a state actor." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (citation omitted). To impose liability on ECRB, a private entity, under Section 1983, Plaintiff must plausibly allege state action. *See Benn v. Universal Health Sys.*, 371 F.3d 165, 169-70 (3d Cir. 2004). ECRB argues that it was not a state actor subject to liability under Section 1983. (ECF 21-1, "Br." at 14-16.)

A private actor is in certain cases treated as a state actor. The core question is whether there is a sufficiently "close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Leshko*, 423 F.3d at 339 (internal citation omitted). The state must be "responsible for the specific conduct of which the plaintiff complains,"

6

not merely connected to the actor in a general sense. *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

The Third Circuit recognizes three tests to determine whether state action exists: "(1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach*, 589 F.3d at 646 (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)) (citation modified). Regardless of the test used, this is a fact-intensive inquiry. *Id.* Plaintiff argues that the facts alleged "fit all three tests for state action." (Opp. at 8.)

### a.  Public Function Test

Under the public function test, the private entity must perform a function that is "traditionally the exclusive prerogative of the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (citation omitted). This is a "rigorous standard" that is "rarely…satisfied." *Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159, 165 (3d Cir. 2001) (citation omitted); *see also Kach*, 589 F.3d at 648 (describing the public function test as a "heavy burden" on a plaintiff).  The Supreme Court has emphasized that "[a]cts of private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Rendell-Baker*, 457 U.S. at 840–42.

The allegations here do not satisfy the public function test. Plaintiff's allegations that ECRB "actively and regularly towed and stored vehicles at the direction of Passaic police officers acting in the regular course of their duties as law enforcement officers" and that "Passaic delegates a portion of the performance of [its] essential functions to ECRB" are insufficient to meet the

public function test. (Compl. ¶¶ 15, 34.) Plaintiff does not allege that towing and storing vehicles are traditional and exclusive state powers. *See Flagg Bros. v. Brooks*, 436 U.S. 149, 158 (1978) ("While many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.'").

### b.  Joint Action Test

Plaintiff's allegations do, however, satisfy the joint action test. A private party acts under color of law when it "has acted with the help of or in concert with state officials." *Kach*, 589 F.3d at 646. Joint action does not exist where the State does not direct or control the challenged conduct. *See Groman v. Township of Manalapan*, 47 F.3d 628, 642 (3d Cir. 1995) (holding that a first-aid squad was not acting under color of law, even though it functioned in support of the police, because it "did not have its professional decisions dictated or guided by the state," and the State did not "control[] the [squad's] professional conduct."). Here, Plaintiff alleges that ECRB acted at the direction of Passaic police officers and towed and stored the Vehicle at Passaic's direction. (Compl. ¶¶ 15, 34.) Plaintiff further alleges that "ECRB only possessed the Vehicle by virtue of its relationship with Passaic and acted in concert with Passaic to seize, detain and dispose of the Vehicle." (*Id.* ¶ 30.)

Courts across jurisdictions have repeatedly found joint action can occur where towing occurs at police direction pursuant to a statutory enforcement scheme. *See, e.g.*, *Meier v. City of St. Louis*, 934 F.3d 824 (8th Cir. 2019); *Mercedes-Benz Fin. Servs. USA, LLC v. City of New York*, 770 F. Supp. 3d 643, 654–55 (S.D.N.Y. 2025); *Lee v. NNAMHS*, 2007 WL 2462616, at *3 (D. Nev. Aug. 28, 2007). The Court finds that Plaintiff has plausibly alleged joint action between ECRB and Passaic because Plaintiff alleged that ECRB's conduct reflects joint participation in the state-authorized seizure of the Vehicle. Contrary to ECRB's arguments, these allegations are

8

particularized and sufficient under Rule 8. (*See* Reply at 3 (arguing that TD may not group plead state action).)

### c. Interdependence Test

The allegations also meet the interdependence test. Under the interdependence test, state action exists where the State has "exercised coercive power or…provided such significant encouragement, either overt or covert, that the [challenged activity] must in law be deemed that of the State." *Becker v. City Univ. of Seattle*, 723 F. Supp. 2d 807, 813 (E.D. Pa. 2010) (quoting Kach, 589 F.3d at 648). "The focus of this analysis is on 'whether the state has exercised control over the *particular conduct* that gave rise to the plaintiff's alleged constitutional deprivation.'" *Id.* (quoting *Kach*, 589 F.3d at 648–49) (emphasis in original).

Here, Plaintiff alleges that Passaic and ECRB acted in concert. Passaic ordered ECRB to tow the vehicle (Compl. ¶¶ 15, 34), an arrangement that benefits Passaic. (*See id.* ¶¶ 29, 41.) These allegations satisfy the interdependence test. *See W. Funding, Inc. v. S. Shore Towing, Inc.*, No. 19-cv-12853, 2021 WL 1399798, at *8–9 (D.N.J. Apr. 14, 2021) (towing company plausibly acted under color of law both when towing at police direction and when demanding statutory towing/storage fees); *Eastman v. City of Philadelphia*, 2024 WL 4988971, at *7 (E.D. Pa. Dec. 5, 2024) (finding that "[t]he Parking Authority was contacted by and acted under direction of the PPD," making the City "sufficiently connected to the towing to satisfy the requirements of § 1983.").The Court finds unpersuasive ECRB's argument that ECRB is not a state actor because the assertion of a garagekeeper's lien is not state action. (*See* Br. at 15 (citing *Parks v. "Mr. Ford"*, 556 F.2d 132, 135 (3d Cir. 1977).) *"Mr. Ford"*, upon which Defendant relies, is not relevant here. That case involved residents whose motor vehicles were retained by private repairmen when the plaintiffs refused to pay the amounts which the repairmen claimed that they owed for repairs. *"Mr.*

9

*Ford",* 556 F.2d at 134-35. Unlike a garagemen's lien imposed when an individual fails to pay for services rendered, here ECRB allegedly towed and stored the Vehicle at the direction of and in coordination with Passaic.

Finally, Plaintiff has also pled that ECRB acted pursuant to a policy and custom. (Compl. ¶ 42.) *Contra W. Funding*, 2021 WL 1399798, at *9 (finding that towing company could not be liable even though plaintiff plausibly alleged state action because the plaintiff did not attempt to establish that a policy or custom caused deprivations under *Monell v. New York City Dep't. of Social Services*, 436 U.S. 658 (1978)). For these reasons, Plaintiff has pled state action by ECRB.

### 2. Due Process

Because Plaintiff has alleged that ECRB can be considered a state actor, the Court turns to the substantive constitutional claims.

The Due Process Clause of the Fourteenth Amendment provides that states shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To establish such a procedural due process violation, a plaintiff must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (quotation marks and citation omitted). The Third Circuit has held that "[t]hough it need not happen pre-tow, '[w]hen a car is towed or impounded, some form of fair and impartial hearing at which an owner is provided an opportunity to challenge the lawfulness of removing his car and assessing charges against him must be provided within a reasonable time period.'" *Honda Lease Tr. v. Malanga's Auto.*, 152 F.4th 477, 488 (3d Cir. 2025) (quoting *Breath v. Cronvich*, 729 F.2d 1006, 1011 (5th Cir. 1984)).

10

TD alleges that Passaic and ECRB failed to provide a hearing relating to the detention of the Vehicle or the conditions placed on its release in violation of its due process rights. (Compl. ¶ 26.) Plaintiff further argues that it is Passaic's and ECRB's regular custom and policy "to not provide any form of constitutionally adequate notice, nor any hearing whatsoever" in connection with the seizure of vehicles, turnover of possession to ECRB, detention of vehicles while ECRB asserts an *ex parte* possessory lien on vehicles, or when ECRB takes title to or sells vehicles. (*Id.* ¶ 44.) ECRB argues that Passaic, not ECRB, it has an obligation to establish a hearing process for the detention of the Vehicle, and therefore the due process claim against ECRB should be dismissed. (Br. at 17; Reply at 7-8.)

As an initial matter, Plaintiff has alleged a property interest in the Vehicle protected by the Fourteenth Amendment based on its security interest. *See Toyota Motor Credit Corp. v. Borough of Wyoming, PA*, No. 23-00377, 2023 WL 7412941, at *3 (M.D. Pa. Nov. 9, 2023). Next, ECRB is correct that other courts have held that towing companies do not have the ability to provide plaintiffs with due process to challenge the impoundment of their vehicles and dismissed due process claims against them on that basis. *See, e.g.*, *Dorrell v. Nassau Cnty.*, No. 23- 8471, 2026 WL 172421, at *7 (E.D.N.Y. Jan. 22, 2026) (collecting cases). In *Mays v. Scranton City Police Dep't*, the court held, at summary judgment, that a tower was not responsible for a failure to provide a due process hearing in connection with a vehicle impoundment. 503 F. Supp. 1255, 1264 (M.D. Pa. 1980). In *Mays*, the towing agent "merely [held] the vehicle and [sought] compensation for his services." *Mays*, 503 F. Supp. at 1264. As the court explained, if the basis for the tow proved to be invalid, the towing agent "[could] presumably look to the city for remuneration," while if the towing was valid, the vehicle owner would be responsible for the towing costs. *Id.* The *Mays* court noted, "[a]lthough the tower retains the vehicle and thus plays a central role in the governmental

11

appropriation of property, he is not in a position to provide the procedural avenue by which the vehicle may be released." *Id.* at 1264.

The Court does not find those cases dispositive at the motion to dismiss stage in this case.[2] Instead, the allegations here are more closely analogous to *Sheller v. City of Philadelphia*, No. 11-2371, 2012 WL 4754820 (E.D. Pa. Oct. 5, 2012). In *Sheller*, the court denied the towing company's motion to dismiss the due process claim against it, reasoning that, unlike in *Mays*, "owners pay the [Philadelphia Parking Authority] for towing and storage regardless of whether the towing is invalid and no process exists to receive a refund or waiver of these fees and costs." *Id.* at \*5. Similarly, here Plaintiff alleges that ECRB asserts an *ex parte* possessory lien over vehicles seized by Passaic police rather than receiving monetary compensation from Passaic for the services it renders to Passaic. (Compl. ¶¶ 36-38.) Moreover, Plaintiff alleges that "Defendants insist persons with preexisting property interests satisfy ECRB's *ex parte* possessory lien, and further asserts that if this unilateral condition is not satisfied, Defendants can take title to, and/or sell, the impounded vehicles and eliminate all other persons interest in those vehicles." (*Id.* ¶ 40.) Based on these allegations, Plaintiff has pled a due process violation against ECRB. *See Toyota Motor Credit Corp.*, 2023 WL 7412941, at \*3 (denying towing company's motion to dismiss because of "the lack of any timely notice let alone hearing afforded to it by [the towing company] regarding its interference with [Toyota's property] interest[.]"). Given the specific facts of this case, ECRB's arguments are better suited for summary judgment. The Court declines to dismiss this claim against ECRB at this time.

---

[2] *Dorrell* and *Mays* were both decided at summary judgment, after a fact record was developed. And in *Mercedes-Benz Fin. Servs. USA, LLC v. City of New York*, an analogous case involving a lienholder plaintiff decided at summary judgment, the court denied both the city defendant and towing defendant's motions to dismiss the due process claim and granted plaintiff's motion for summary judgment on the claim. 770 F. Supp. 3d 643, 658-61 (S.D.N.Y. 2025).

### 3. Fourth Amendment

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Plaintiff alleges that it was deprived of its property by an unreasonable seizure and therefore Defendants violated the Fourth Amendment. (Compl. ¶¶ 59-68.)

"[W]hen the government seizes property, the Fourth Amendment requires that its initial seizure and continued retention be reasonable." *Honda Lease*, 152 F.4th at 489. A seizure "reasonable at its inception can become unreasonable if unduly prolonged," and Fourth Amendment protections "apply to both the initial seizure and ongoing retention of private property." *Id.* (citations omitted). ECRB argues that ECRB did not seize the vehicle and that its impoundment "falls squarely within the community caretaking exception to the warrant requirement[.]" (Br. at 17-18.) Under the "community caretaking" exception to the Fourth Amendment warrant requirement for seizures, public officials may seize property without a warrant to address safety risks. *United States v. Smith*, 522 F.3d 305, 313 (3d Cir. 2008). The Third Circuit has held that police "impoundments of vehicles for community caretaking purposes are consonant with the Fourth Amendment so long as the impoundment decision was reasonable under the circumstances." *Id.* (cleaned up).

Here, Plaintiff alleges that ECRB towed the Vehicle and that Defendants' seizure of the Vehicle was unaccompanied by a warrant or "any legitimate exception to the warrant requirement." (Compl. ¶¶ 16, 18, 25, 63-64.) Based on these allegations, the Court cannot determine without a developed factual record whether the community caretaking exception to the warrant requirement applies. Plaintiff has therefore alleged a Fourth Amendment violation against ECRB.

**B. State Law Claims**

TD also brings state law claims against ECRB for replevin (Count 4), conversion (Count 5), and tortious interference (Count 6).

**1. Conversion**

TD alleges that it can maintain a claim for conversion against ECRB because (1) it had an immediate right to possession of the vehicle (Compl. ¶ 97), (2) it demanded possession from ECRB (*id.* ¶ 21), and (3) ECRB has refused, and continues to refuse, to surrender possession of the Vehicle to TD to the exclusion of TD's rights (*id.* ¶¶ 21-23). (Opp. at 30-31.)

"To constitute a conversion of goods, there must be some repudiation by the defendant of the owner's right, or some exercise of dominion over them by him inconsistent with such right, or some act done which has the effect of destroying or changing the quality of the chattel." *Meisels v. Fox Rothschild LLP*, 240 N.J. 286, 303–04 (2020) (quoting *Frome v. Dennis*, 45 N.J.L. 515, 516 (Sup. Ct. 1883)).

ECRB argues that TD does not allege that it gave ECRB notice and demanded possession, or that ECRB wrongfully exercised control over the Vehicle. (Br. at 9-11.) First, TD did allege that it demanded ECRB surrender the vehicle. (Compl. ¶¶ 93-94, 98.) Next, Plaintiff plausibly alleges that TD wrongfully exercised control over the vehicle. (*See id.* ¶¶ 97-99.) Plaintiff has alleged that, before ECRB towed the Vehicle, the Customer defaulted on its payment obligations under the retail installment agreement and therefore TD has a superior right to possession of the Vehicle. (*Id.* ¶¶ 10, 13-14.) These allegations are sufficient to state a claim for conversion. *See Associates Commercial Corp. v. Wallia*, 511 A.2d 709 (N.J. Super. Ct. App. Div. 1986); *see also* N.J. Stat. Ann. 12A:9-609; *Fleet Cap. Corp. v. Yamaha Motor Corp., U.S.A.*, No. 01-1047, 2002 WL 31174470, at *23 (S.D.N.Y. Sept. 26, 2002) (applying New York law).

14

### 2. Replevin

To prevail in a replevin action, "the party seeking the goods bears the burden of demonstrating ownership of the property and the right to exclusive possession." *Richmond v. Martianou,* No. A-0773-22, 2024 WL 26464, at *3 (N.J. Super. Ct. App. Div. Jan. 3, 2024) (citing *Kleinfeld v. General Auto Sales Co.*, 118 N.J.L. 67, 71 (E. & A. 1937)).

ECRB argues that (1) there is no factual basis for replevin since TD does not have an exclusive right to possession in the Vehicle and (2) TD has no legal basis for replevin because the Customer must be a party to the lawsuit and is not. (Br. at 13-14; Reply at 13-15.) Contrary to ECRB's arguments, TD has alleged that it has an exclusive right to possession in the vehicle because the Customer defaulted on its payment obligations to TD under the retail installment agreement. (Compl. ¶¶ 10, 13-14.) *See All. Laundry Sys., LLC v. Bharaj*, No. A-3066-11T3, 2013 WL 1688367, at *4 (N.J. Super. Ct. App. Div. Apr. 19, 2013) (affirming award for a writ of replevin for a plaintiff with a perfected UCC lien, which took priority over a landlord's lien). The Court also agrees with Plaintiff that the Customer is not a necessary party to the replevin claim under Federal Rule of Civil Procedure 19. First, as TD notes, it alleges that it is entitled to repossess the Vehicle by virtue of the Customer's default on the retail installment contract without judicial process. (Opp. at 37 (citing N.J. Stat. Ann. 12A:9-609(b)); Fed. R. Civ. P. 19(a)(1)(A).) Second, any decision on the cause of action for replevin will not affect the Customer's rights *vis a vis* TD, since TD alleges it is lawfully entitled to repossess the Vehicle. (*Id.*); Fed R. Civ. P. 19(a)(1)(B). *Testerion, Inc. v. Skoog*, which ECRB cites in support, does not compel a different result. In that case, the court, applying Minnesota law, denied the plaintiff's motion for a writ of replevin where "the issue of which party has title to the machine [at issue]…is [ ] highly disputed." *Testerion, Inc. v. Skoog*, 602 F. Supp. 578, 581 (D. Minn. 1984). Here, contrary to Defendant's arguments, TD

has pled an exclusive right to possession. (Compl. ¶¶ 13-14.) While discovery may show that TD is not entitled to repossess the Vehicle under N.J. Stat. Ann. 12A:9-609, TD has at this stage sufficiently alleged that its possessory interest in the Vehicle takes priority over both the Customer and ECRB.

### 3. Tortious Interference

The Court agrees with ECRB that TD has not pled tortious interference with contractual relations or prospective economic advantage.

To state a claim for tortious interference with prospective economic advantage under New Jersey law, a plaintiff must allege "(1) a reasonable expectation of economic advantage from a prospective contractual or economic relationship; (2) the defendant intentionally and maliciously interfered with the relationship; (3) the interference caused the loss of the expected advantage; and (4) actual damages resulted." *Am. Leistritz Extruder Corp. v. Polymer Concentrates, Inc.*, 363 Fed. App'x 963, 967 (3d Cir. 2010) (citation omitted). To plead tortious interference with contractual relations, factors (2) and (4) are the same, but a plaintiff must also allege the existence of a contract and loss or breach of the contract. *See loanDepot.com v. CrossCountry Mortg., Inc.*, 399 F. Supp. 3d 226, 235 (D.N.J. 2019) ("Under New Jersey law, a claimant alleging tortious interference with contractual relations must allege: (a) the existence of a contract, (b) intentional interference, with malice, (c) loss [or breach] of the contract, and (d) damages.") (internal quotations and citations omitted).

Plaintiff has not adequately pled malice. "[M]alice is defined to mean the harm was inflicted intentionally and without justification or excuse." *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 751 (1989) (citation omitted). To satisfy this factor, "the conduct must be both 'injurious and transgressive of generally accepted standards of common morality or of

law.'" *Micro Image Techs., Inc. v. Olympus Corp. of the Americas*, No. 2018-781, 2022 WL 17132156, at *5 (D.N.J. Nov. 22, 2022) (quoting *Harper-Lawrence, Inc. v. United Merchants and Mfrs., Inc.*, 619 A.2d 623, 630 (N.J. Super. Ct. App. Div. Jan 22, 1993), *cert. denied*, 134 N.J. 478 (1993)). "'Maliciousness' is determined on an individualized basis. *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 659 A.2d 904, 933 (N.J. Super. Ct. App. Div. 1995) (citation omitted). TD has alleged here that ECRB accepts seized vehicles from Passaic, including the Vehicle at issue here, "as either partial or total payment for the towing and storage services ECRB provides to Passaic." (Compl. ¶ 37.) ECRB's actions were not asserted against TD to intentionally interfere with its business relationship with the Customer, but rather to obtain payment for the services it provides to Passaic. Plaintiff's tortious interference claim against ECRB (Count 6) is therefore dismissed without prejudice.

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (ECF 21) is **GRANTED in part** and **DENIED in part**.  Count 6 is dismissed without prejudice. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:  Clerk
cc:    Stacey D. Adams, U.S.M.J.
       Parties